(49 Misc. Rep. 146)

PRATT v. CLARK et al.

(Supreme Court, Special Term, New York County. January, 1906.)

SPECIFIC PERFORMANCE—DEFAULT OF PLAINTIFF.

Plaintiff had entered into three contracts as to the leasing and furnishing of a hotel; the first being conditioned on plaintiff's obtaining approvals from parties to one of the other contracts which he was unable to obtain because of objections raised to their authority to make one of the leases involved. Held that, the first contract not being enforceable against plaintiff until he had secured such approvals, and the performance

of the second contract being based on the carrying out of the first one, and there being insuperable objections to the enforcement of a decree of specific performance, if granted, it would not be allowed.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Specific Performance, § 32.]

Action by Tracy W. Pratt against William Irving Clark and others. Judgment for defendants.

Samuel Untermyer and Clarence F. Birdseye, for plaintiff.
Albert Stickney, for defendant executors.
Albert Stickney, guardian ad litem, for infant defendants.
Charles I. McBurney, for defendant Sweeny-Tierney Hotel Co.
Arnold & Greene, for defendant Todd.

DAVIS, J. This action is brought to enforce specific performance of three contracts relating to the leases and furnishings of premises known as the "Marlborough Hotel," on the westerly side of Broadway, between Thirty-Sixth and Thirty-Seventh streets in the city of New York. The first contract in question, dated July 16, 1904, was made between the defendant Louis H. Todd and the plaintiff, Tracy W. Pratt. The second contract, dated September 29, 1904, was made between the defendants W. Irving Clark and Caroline L. Iselin, as executors and trustees under the last will and testament of Charlotte M. Goodridge, deceased, of the first part, Matilda G. Cornochan, Charlotte G. Wyeth, Caroline L. Iselin, and Frederic G. Goodridge, only children and heirs at law of said Charlotte M. Goodridge, of the second part, and the plaintiff, Tracy W. Pratt, of the third part. The third contract, dated October 26, 1904, was made between the parties who made the second contract. At the meeting for the making of the first contract (July 16, 1904), the defendant Todd, or parties under his control, was the lessee of the Marlborough Hotel property. He held under three separate lessors; the hotel being situated upon three separate parcels. The leases under which he held are referred to in this action as the Bradley lease, covering the northermost parcel, the Everhart lease, covering the parcel immediately to the south of the Bradley property, and the Goodridge executors' lease, covering the remainder of the block extending to Thirty-Sixth street. Each of these leases extended to May 1, 1907, but the Goodridge executors' lease contained covenants for two renewals of 21 years each. The Goodridge executors' lease was made May 1, 1902, between the defendants William Irving Clark and Caroline L. Iselin, as executors and trustees under the will of Charlotte M. Goodridge, deceased, and others, and Louis L. Todd. Prior to the making of the executors' lease, Todd held the Goodridge parcel under a lease made January 27, 1898, by Mrs. Charlotte M. Goodridge, the testatrix of defendants Clark and Iselin. Mrs. Goodridge having died March 3, 1902, her executors and trustees united with her children in making the lease to Todd of May 1, 1902, above referred to. This latter lease is substantially the same as the lease of January 27, 1898. On the trial it was claimed by the plaintiff that the record of the transactions between Todd and the executors, relating to these various leases, showed that the lease made by Mrs. Goodridge January 27, 1898, had been canceled and annulled by an agreement between Todd and the

executors dated May 23, 1902 (Exhibit 9), and that the executors' lease of May 1, 1902, was the only one outstanding, and that therefore, presumptively, the executors and trustees had no power to enter into that covenant of the executors' lease which provided for a renewal which would extend the term beyond the time when their trust must terminate. The executors' lease in question, with the renewals, would run until 1949, and the trustees' estate could not possibly last longer than September, 1923, and might be divested before that time.

The first question presented is whether or not the plaintiff is entitled to specific performance of the Todd contract, of July 16, 1904. At the time of the making of this contract, Todd owed large sums of money for arrearages of rent, taxes and assessments, etc. He also owed $200,000 to the Goodridge estate, for which indebtedness he had given a mortgage on his interest under the Goodridge leases at the time of the making of the executors' lease of May 1, 1902. Under this contract, Todd agrees to sell, or cause to be sold, to Pratt, for $400,000, the Goodridge, Everhart, and Bradley leases, and all of his interest in the hotel property, including the buildings erected on the Goodridge property, and all the fixtures and furnishings of the entire hotel, "free and clear and discharged from any right or claim of the said Marlborough Hotel Company, or of any other person, firm, or corporation whatever, otherwise than as stated and contained in said Goodridge, Everhart, and Bradley leases, and excepting the $200,000 mortgage above mentioned." In payment of the purchase price of $400,000, Pratt, on his part, agrees as follows: First, to assume or cause to be assumed, by parties satisfactory to the parties interested in the Goodridge property, the mortgage indebtedness of $200,000 to the Goodridge estate; second, to take over the hotel, leases, property, and business in the name of a corporation to be duly formed, which corporation shall be satisfactory to the said William Irving Clark and Caroline L. Iselin; third, that this corporation shall issue bonds (not exceeding $200,000) and a mortgage upon the properties so taken over, and $50,000 of these bonds shall be given to Todd as part of the purchase price of his interest; fourth, to assume, to the satisfaction of the holders of the Goodridge, Everhart, and Bradley leases, any rentals, taxes, assessments, water rates, interest, or other sums that may be due under or on such leases, or any of them, or interest on mortgages at the time of the actual closing, with any interest charges thereon on the date of such closing; fifth, to obtain from each of the lessors a release and discharge of Todd of any sum or sums so assumed and unpaid; sixth, to obtain from the Goodridge estate a release of Todd from all his obligations under his lease, and the bond and mortgage made by him; seventh, to secure releases of Todd from the Everhart and Bradley leases; eighth, to pay the balance of the purchase money, in cash, at the time of the actual transfer and delivery of the properties. Under article 4, Todd's right to enforce this agreement is made dependent upon Pratt's obtaining from the owners of the Goodridge property a lease, or an agreement for a lease, beginning May 1, 1907, and to extend for 21 years, with a renewal of 21 years. The time for executing the instruments to carry out this agreement was fixed for September 8, 1904.

It will be observed that the carrying out of the Todd contract was made to depend upon Pratt's ability to satisfy the Goodridge executors upon many important points, and upon Pratt's getting from them a lease to begin May 1, 1907, or an agreement for such a lease. On September 29, 1904, he got an agreement for such a lease. This agreement is one of the three sought to be enforced. A copy of the proposed lease was annexed to this agreement, and was therein declared to be satisfactory to all the parties thereto as to its covenants and conditions. Under this executors' agreement the acceptance of Pratt as tenant in place of Todd, and the actual giving of the new lease to Pratt, and the release of Todd are made to depend upon certain things first to be done by Todd and Pratt. For instance, Todd and Pratt are to pay to the executors all sums due under the executors' lease to Todd, as well as interest on mortgages up to October 17, 1904. Again Pratt is to pay, or assume and secure in a manner satisfactory to the executors, all sums due for taxes, assessments, and water rates, etc.; also, Todd or Pratt is to pay all sums due on account of the principal of the $200,000 mortgage, with interest. Upon the fulfillment by Pratt and Todd of these and certain other conditions, Todd is to be released by the executors, Pratt is to be accepted in Todd's place, and a new lease is to be given by the executors to Pratt. The time for closing this contract was fixed for October 17, 1904. The closing of the Todd contract and the delivery of the assignment by Todd to Pratt were by arrangement changed to this date.

The contract with the executors having been signed, Pratt submitted the proposed lease to the Title Guarantee Company with a view of having the company guaranty the $200,000 of bonds called for under the Todd contract so far as the title was concerned. The company refused to make the guaranty on the ground that the record showed that the executors had no power to make the proposed lease, which extended the term beyond the duration of the trust estate. This objection was communicated to the defendants, and the day of closing was adjourned, by the agreement of October 26, 1904, to November 1, 1904. Todd was not a party to this agreement, but it appears that he assented to the adjournment. Under the terms of this agreement the contract of September 29, 1904, is reaffirmed, as the complete contract between the parties, "although certain details as to the performance of such contract need hereafter to be adjusted." The plaintiff claims that the "details" referred to were understood by all parties to mean the bringing of legal proceedings to remove the apparent cloud upon the title under the lease. In other words, the plaintiff claims that the defendant executors agreed to bring those legal proceedings and failed to do so; and he asks that, upon the proofs and pleadings in this suit, this cloud be declared removed and that the defendants be directed to perform their respective contracts. The closing of this contract was further adjourned to and including November 3, 1904.

The closing did not take place on November 3, 1904, and thereafter the defendants, representing the Goodridge estate, served a notice on Pratt requiring him to perform on or before November 22, 1904, in default of which the contract was to be deemed abandoned by Pratt. This time was thereafter extended to November 23, 1904, but there

was no performance. On November 23, 1904, the parties met at the office of the attorneys for the executors, where plaintiff's attorney served written notices upon Todd and upon the attorneys of the executors, asserting therein the plaintiff's readiness and ability to perform and the inability of Todd and the executors to perform their respective contracts. The plaintiff also claims that he made a good tender of performance at this meeting, but I think the evidence fails to establish this claim. He certainly was not in a position to perform the Todd contract, his ability to perform which depended so largely upon the approval of the executors. Upon the service of these notices, all of the defendants, including Todd, treated the contracts as abandoned by Pratt, and finally made an agreement with the defendant the Sweeny-Tierney Hotel Company, under which, on or about December 16, 1904, the latter became the owners of the interest of Todd in the hotel property and lease upon terms satisfactory to the Goodridge estate. The Sweeny-Tierney Hotel Company are now in possession of the hotel property.

If the plaintiff fails to establish his right to specific performance of the Todd contract, he cannot succeed on the executors' contract, because the obligation of the executors to perform their agreement with Pratt was made to depend upon Todd and Pratt performing their contract with each other. Under the Todd contract, Pratt's performance thereof was conditioned upon his "obtaining from the owners of the Goodridge property such a lease, or agreement for such a lease, to commence May 1, 1907, and to extend for 21 years, at the annual rental of $45,000, payable monthly in advance, with the taxes, assessments, and water rates that may be imposed upon the said premises to be paid by the tenant; such new lease to be in such form, and with such covenants and agreements, as shall be agreed upon by the Goodridge executors and the said party of the second part [Pratt]." Thereafter, on September 29, 1904, Pratt got an agreement for "such a lease" from the executors (Plaintiff's Exhibit 16). A copy of the lease is annexed to the agreement, in which there appears that statement that the lease is satisfactory to the parties thereto as to the covenants and conditions therein contained. The obtaining of this agreement thus fulfilled the conditions upon which Pratt's obligation to perform the Todd contract depended, and Todd's right to enforce his contract with Pratt was thus fixed.

But just at this time Pratt fell into a position of peculiar helplessness. The Guarantee Company refused his application to guaranty a proposed issue of bonds, so far as the title under the executor's lease was concerned, on the ground that the executors had no power to make the lease. Pratt, therefore, refused to perform his contract with the executors until, by legal proceedings, they had established their right to make the proposed lease. Of course, the raising of this objection prevented Pratt from performing his part of the Todd contract, because it prevented him from getting the various approvals and consents of the executors provided for in the Todd contract. On the other hand, Todd's rights were not affected by this objection to the title. It was immaterial to him whether or not that objection was sound. He had not agreed to make the lease. He had merely agreed to sell what lease he had and without any guaranty as to the terms and conditions of that

lease. In fact, Todd, up to the time of the raising of the objection to title by Pratt, was himself in a position to perform, but Pratt was not. It then became necessary for Pratt to postpone the closing of the Todd contract. The evidence shows that Todd assented to this in order to give Pratt time to settle his controversy with the executors. In the meantime Pratt endeavored to get Todd to modify his contract. Todd refused to do this unless Pratt paid him something on account of the purchase price. Pratt refused to pay, and so the contract remained unmodified, Pratt and the executors having failed to agree by November 23, 1904, Pratt was thus rendered unable to perform his part of the Todd contract. He was then in default with Todd. The notice served upon Todd by Pratt on November 23, 1904 (Exhibit S), with a view of putting Todd in default, was clearly ineffective for that purpose. Todd was, therefore, in a position to dispose of his lease and hotel property to other parties. He did so dispose of it, on or about December 16, 1904, to the defendant the Sweeny-Tierney Hotel Company.

In view of the fact that Pratt was in default with Todd, the court cannot now decree a specific performance of the Todd contract. The equity of this conclusion becomes more apparent from the fact that Todd could not succeed in a suit to compel performance by Pratt, because it would involve the necessity of Pratt's getting from the trustees the various approvals and consents mentioned in the Todd contract. If, under such a decree, Pratt should fail to get these consents and approvals, the decree would be useless because of the impossibility of executing it in case the trustees refused their consent and approval as provided for in the Todd contract. It follows, therefore, that if Pratt is not entitled to a specific performance of the Todd contract, the court will not decree performance of the executors' contract. Assuming, though not here deciding, that the proofs and pleadings herein establish the executors' right to make the lease called for in the executors' contract, the granting of the decree asked for would be futile, because it would require the executors to treat Todd as the owner of the lease and hotel property, when, in fact, he has lawfully parted with those properties and has no further interest therein. Such a decree would also involve compelling Pratt to obtain from the executors their consent and approval to various propositions of the Todd contract, which consents and approvals they might withhold, and now probably would withhold. Obviously, there are insuperable obstacles to the executing of such a decree, and the granting of it would be a vain proceeding.

For the reasons above referred, as well as for others not necessary to specify, the decree for specific performance as prayed for in the complaint must be refused, and judgment rendered in favor of the defendants dismissing the complaint, with costs.

Judgment for defendants, dismissing the complaint, with costs.